[Sac. No. 4031. In Bank.—July 17, 1929.]

CALIFORNIA PACKING CORPORATION (a Corporation), Respondent, v. MANUEL LOPEZ et al., Appellants.

T. A. Farrell, George A. Work and W. U. Goodman for Appellants.

Rufus H. Kimball, Pillsbury, Madison & Sutro and Joseph M. Raines for Respondent.

PRESTON, J.—Appeal from judgment entered upon a directed verdict for plaintiff in an action of ejectment.

The case involves the question of the survivability of rights under a written agreement denominated an "asparagus cropping contract" entered into on February 15, 1924, between plaintiff's predecessor, The Wright Corporation, and John Lopez and John Souza, copartners doing business as John Souza & Co., the pertinent terms of which are substantially as follows: The Wright Corporation covenanted to permit John Souza & Co. to occupy for the cropping seasons of 1924–1934, inclusive, certain lands comprising about 100 acres in the Sacramento River Delta District; and to grow asparagus thereon and intercrops as approved by said corporation, which was to furnish the company with all necessary tools, teams, asparagus roots, etc., and an allowance of $5.50 per acre for the preparation of said land for planting; and to pay it after harvesting, washing, packing and delivery of the crop as directed by said corporation, fifty-five per cent of the net proceeds of all asparagus and seventy-five per cent of all intercrops. Said company covenanted to care for and cultivate said growing asparagus and to harvest, gather, wash, pack and deliver it as directed by the corporation, to furnish at its own expense all labor necessary for that purpose, and in all respects to care for and improve the land, buildings and equipment in its possession. Said contract contained the further covenant that:

"The second party shall have no right to assign this agreement or sublet the above described land or any part thereof, without the written consent of the first party."

On February 23, 1925, with the written consent of The Wright Corporation, John Souza & Co. assigned said contract to John Lopez. On March 6, 1925, he was accidentally killed. His brother, Manuel Lopez, a minor at the time, but who became of age November 17, 1925, thereupon immediately took up his abode upon the land and assumed charge of the growing of said crops and of otherwise fulfilling in all respects the terms of said contract. On February 10, 1926, he was granted letters of administration upon the estate of John Lopez. In August, 1925, and January, 1926, The Wright Corporation, which had made no objection to his retention of the premises, issued and turned over to him checks made out to John Lopez covering the amounts due under said agreement from the sale of the 1925 bean and asparagus crops. On December 31, 1925, plaintiff, California Packing Corporation, purchased from The Wright Corporation about 5,000 acres of land, which included the one hundred acres and pump-house here involved. Defendant, then having learned that his right to continue under said contract was questioned, made no further effort to farm the land but retained his residence at the pump-house. Thereafter this action was instituted to eject him and to recover damages in the sum of $100. Upon the trial, at the close of the testimony, the court directed the jury to return a verdict for plaintiff, which was done, and judgment thereon was duly entered in its favor. Defendant has appealed.

If said contract is inherently assignable and survived the death of John Lopez, the correctness of appellant's contention that the court erred in directing the verdict for plaintiff cannot be doubted. Contracts for cultivation of the soil are not generally held to be contracts terminable upon death. (*Gribling* v. *Bohan*, 26 Cal. App. 771 [148 Pac. 530]; *Husheon* v. *Kelley*, 162 Cal. 656 [124 Pac. 231]; *LaRue* v. *Groezinger*, 84 Cal. 281 [18 Am. St. Rep. 179, 24 Pac. 42].) Mute evidence that the contract here did not call for the peculiar skill or personal services of any one individual lies in the fact that the assignor of John Lopez was a copartnership.

■ The prohibitory clause against assignment, hereinabove quoted, forbids only voluntary assignment by the parties; it is not violated by an involuntary assignment by operation of law (*Farnum* v. *Hefner*, 92 Cal. 543 [28 Pac. 602]), and the fact that it was necessary to insert it is itself an implication of the inherent assignability of the contract, and hence its inherent survivability. These terms are practically interchangeable. (*Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461 [274 Pac. 959], and cases there cited.) The presumption is that a party making such a contract intends to bind his executors and administrators. (*Estate of Fulmer*, 203 Cal. 693 [58 A. L. R. 430, 265 Pac. 920].) ■ Furthermore, that said contract was not merely one of employment is shown by its context, particularly by the covenant charging John Lopez with the duty of furnishing at his own expense all labor necessary for cultivation of the crop. Even a contract of employment coupled with such an interest, would be survivable.

Appellant urges that, although denominated a cropping contract, the agreement really creates an interest in land and is a lease. The above pronouncement renders unnecessary a precise classification of the document, which in any event was inherently assignable and survived the death of John Lopez.

Other considerations also justify a reversal of this judgment. Even if it were true that said contract called for such personal service by John Lopez as rendered it terminable upon his death, there would still remain the question of whether said corporation, by its acts and conduct in permitting Manuel Lopez to continue in possession for many months, was not estopped to claim that the agreement ended or that said provision against assignment without its consent was not waived. These are questions of fact for a jury, as is also the question of whether sufficient evidence was adduced to establish plaintiff as an innocent purchaser for value without due notice of defendant's occupancy of said land. ■ The court has the right to direct a verdict only when, disregarding conflicting evidence and giving opposing evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of suffi-

cient substantiality which would support a verdict contrary to the one directed, if given.

The record before us shows that the evidence upon the above issues was not without conflict and was in fact amply sufficient to warrant their submission to the jury. There is evidence that The Wright Corporation permitted defendant to come upon the said land without protest two days after the death of said John Lopez and to remain there for more than nine months without objection, during all this time dealing with its superintendent and spending money, amounting to some $4,000, for cultivation and labor as provided in said agreement; that said corporation during 1925 accepted from him and sold an asparagus crop and intercrop of beans, dividing the proceeds thereof as in said agreement provided and making payment to defendant by check made out to said John Lopez, during all of which time a correspondence was being conducted looking to the transfer of the instrument, therein called a lease, into the name of Manuel Lopez. There is evidence that plaintiff's representative went over said property thoroughly more than once prior to its purchase and learned of the possession of said acreage and pump-house by Manuel Lopez. There is evidence that the heaviest expense in connection with growing asparagus in proportion to the profits is that of the first years, and therefore termination of such a contract prior to expiration of the term thereof results in an unjustified loss to the grower. As above stated, such evidence could have resulted in a verdict for the defendant, and it was for the jury to pass upon it.

Judgment reversed.

Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.